**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| **GARRY EARL SHIDLER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | CAUSE NO.  3:05-CV-804 AS |
| v. ) | |
| ) | |
| **ROBERT MOORE,** *et al.* ) | |
| ) | |
| Defendants. ) | |

### *OPINION AND ORDER*

Garry Earl Shidler, a *pro se* prisoner, submitted a complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Colley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements:  First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of the right

> acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

## I. RELIGION CLAIMS

Mr. Shidler alleges that various defendants prevented him from practicing his religion. He alleges that these acts violated his rights under the First and Fourteenth Amendments as well as the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb.

### A. First Amendment

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987).

"[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988).

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted). "The 'free' exercise of religion thus is rather a misnomer in the prison setting." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988).

### B. Fourteenth Amendment

The Fourteenth Amendment equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions.

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted). Though Mr. Shidler states generally that his rights under the Fourteenth Amendment were violated, the facts he alleges do not indicate that his religion was treated any differently, that similarly situated inmates of other religions were treated differently, or that he would have been treated differently if he had been

3

attempting to practice a different religion. Therefore the Fourteenth Amendment is inapplicable and these claims will be dismissed.

## C. RFRA and RLUIPA

RFRA was declared unconstitutional as applied to state and local governmental entities and their employees. *See City of Bourne v. Flores*, 521 U.S. 507 (1997). Nevertheless, the Congress subsequently enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) which provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Therefore, even though the RFRA claims will be dismissed, those same claims will be analyzed under RLUIPA instead.

RLUIPA does not define substantial burden, but in a case interpreting the land use provisions of RLUIPA, the Seventh Circuit has stated that

> a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). The statute defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.

§ 2000cc-5(7). Nevertheless, a substantial burden may be justified if it is the least restrictive means of furthering a compelling governmental interest.

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.
> . . .
> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Cutter v. Wilkinson*, ___ U.S. ___, ___; 125 S. Ct. 2113, 2123 (2005).

### D. Individual and Official Capacity Claims

Mr. Shidler seeks to bring both individual and official capacity claims. "[A] suit against a[n] . . . official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment precludes damage claims against States as well as official capacity defendants. Meadows v. State of Indiana, 854 F.2d 1068, 1069 (7th Cir. 1988). Nevertheless, injunctive relief may be obtained from a person in his official capacity under the doctrine of *Ex Parte Young. Holton v. Ind. Horse Racing Comm'n*, 398 F.3d 928, 929 (7th Cir. 2005).

### E. The "P" and "N" Housing Units

Mr. Shidler alleges that he was housed on the "P" housing unit from April 25, 2004 until approximately July 31, 2004 when he was transferred to "N"

5

housing unit, and that he was held there until approximately November 1, 2004 when he was transferred to the "E" housing unit. He alleges that all inmates in the "P" housing unit were denied communal worship. He does not mention why he was denied communal worship while he was in the "N" housing unit. Because he alleges that inmates in the "P" housing unit are no longer denied communal worship and because he is no longer housed in either the "P" or "N" housing units, these official capacity claims will be dismissed. *Compare Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (When "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."(Quotation marks and citations omitted.))

Though it is entirely possible that restricting communal worship in "P" and "N" housing units was reasonably related to legitimate penological interests and was necessary to protect security, giving Mr. Shidler the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, he has stated a claim for monetary damages for a violation of the First Amendment.

Mr. Shidler does not allege that he suffered any physical injury.

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 USCS § 1997e(e). Though it is clear that 42 U.S.C. §1997e(e) does not restrict damages in a First Amendment constitutional claim,[1] it is unclear whether it precludes monetary damages in a statutory RLUIPA claim. To date, it does not appear that any federal court has published an opinion addressing this question. Therefore, giving Mr. Shidler the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, he has stated a claim for monetary damages for a violation of RLUIPA related to the denial of communal worship while he was housed in both "P" and "N" housing units.

Having determined that these allegations state a claim, it is necessary to determine who is/are the proper defendant(s) for these claims. Mr. Shidler names Chaplin Babb, Grievance Specialist Sgt. Bowman, Unknown July 21, 2004 Grievance Committee Members 1-3, Administrative Assistant Chris Johnson, and Regional Director Linda VanNatta. The factual basis for naming all of these

---

[1] We agree that, absent a showing of physical injury, § 1997e(e) would bar a prisoner's recovery of compensatory damages for mental and emotional injury. But if that same prisoner alleges some other type of non-physical injury, the statute would not foreclose recovery, assuming that the damages sought were not "for" any mental or emotional injuries suffered. This view is not novel. Indeed, in the context of First Amendment claims, we have held explicitly that prisoners need not allege a physical injury to recover damages because the deprivation of the constitutional right is itself a cognizable injury, regardless of any resulting mental or emotional injury. Using a similar rationale, several of our sister circuits have concluded that § 1997e(e) does not bar all recovery for violations of due process or the right to privacy. These decisions reflect an emerging view that § 1997e(e), as the plain language of the statute would suggest, limits recovery "for mental and emotional injury," but leaves unaffected claims for nominal and punitive damages, which seek to remedy a different type of injury.

*Calhoun v. Detella*, 319 F.3d 936, 940-41 (7th Cir. 2003) (Quotation marks, square brackets, and citations omitted).

defendants is that they reviewed and responded to his grievance about the lack of communal worship for inmates located in the "P" housing unit.

Section 1983 creates a cause of action for damages based on personal liability. A person cannot be held liable under § 1983 unless the person was personally involved in the alleged wrongdoing. A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). Based on the factual allegations in this complaint, it is reasonable to infer that Chaplin Babb and Administrative Assistant Chris Johnson may have implemented, enforced, or could have lifted the restrictions on communal worship for Mr. Shidler while he was in either the "P" or "N" housing units. Such an inference is not reasonable for Grievance Specialist Sgt. Bowman, Unknown July 21, 2004 Grievance Committee Members 1-3, and Regional Director Linda VanNatta. The first four grievance officials, though they had actual knowledge of the restriction, were low level personnel who neither created the policy nor could they have changed it. Furthermore, unlike the minimal civilized measures of life's necessities,[2] the right to communal worship is not absolute and these low level grievance officials lacked the authority or responsibility to weigh competing institutional concerns. Rather

---

[2] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

they could merely implement established policies or address violations of them. Though a regional director is not a low level employee and does not lack either the authority or responsibility for such matters, the complaint and its attached grievance make clear that Linda VanNatta was only notified of the restrictions after they had already been lifted for the "P" housing unit and afer he had been transferred out of it. Neither the facts alleged in the complaint, nor their reasonable inferences, support the allegation that she new anything about the conditions in the "N" housing unit. Based on the facts alleged in this complaint, she lacked personal involvement in these claims and will therefore be dismissed.

### F. Official Record of Religious Preference

Mr. Shidler alleges that since approximately November 1, 2004 when he was placed in the "E" housing unit, he has been denied the opportunity to participate in Islamic communal worship because he is officially listed as a Christian. He states that he was not a Christian and had never practiced the Christian religion. After filing out several forms, his record was changed on December 9, 2004.

Mr. Shidler does not contest the policy of limiting inmates to attending the religious programs of their listed religion. Rather, he only contests that his record was incorrect and, because he was unable to change it more quickly, he was prevented from engaging in communal worship during those 39 days. He does not allege that he was prohibited from changing his designated religion or that anyone prevented him or refused to change his record. Rather he merely alleges that for

9

perhaps Kafkaesque, Byzantine, procedural reason he was delayed. This does not state a claim because there is no allegation of an intent to deny him access to communal worship and "[n]egligence on the part of an official does not violate the Constitution". *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

### G. Religious Name

Mr. Shidler alleges that he is not allowed to use his religious name to send or receive mail. Giving Mr. Shidler the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, these allegations state a claim under both the First Amendment and RLUIPA for both monetary damages and injunctive relief. *See Azeez v. Fairman*, 795 F.2d 1296 (7th Cir. 1986) and IND. CODE 34-28-2-1.5.

Having found a claim it is necessary to determine whether Mr. Shidler has named a proper defendant. Though he alleges that secretary R. Anderson notified him of this policy, a secretary is a low level employee who neither made nor could repeal this policy. Neither is it within a secretary's authority to weigh competing institutional interests to determine whether this was the least restrictive means of furthering those interests. Therefore R. Anderson will be dismissed. Based on this complaint, it is reasonable to infer that Mr. Shidler is alleging that Chaplin Babb and Administrative Assistant Chris Johnson were aware of and are enforcing this policy. Therefore he will be permitted to proceed with this claim against those two defendants in both their individual and official capacities.

### H. Confiscation of Mail

Mr. Shidler alleges that he is being denied access to various religious materials which have been confiscated from his mail. The facts of this complaint do not contend that he is merely being denied religious materials; rather it contends that he is being denied mail addressed to any name other than his incarceration name and that packages of religious materials have been sent to his religious name. Based on the facts alleged in this complaint, it is a reasonable inference that the content of the packages is irrelevant. That is to say, he could not receive a package addressed to his religious name even if it containing non-religious property, but he could have receive a package addressed to his incarceration name even if it had contained the very same religious items he alleges have been confiscated from his mail. Because the facts in this complaint do not support an allegation of an intent to deprive Mr. Shidler of access to religious property, this is merely a property claim, not a religion claim.

Though the Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law", a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless

it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (INDIANA CODE § 34-13-3-1 *et seq.*) provides for state judicial review of property losses caused by government employees, and provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due.") Therefore, even though Mr. Shidler may have a state tort claim for the confiscation of his property, he does not have a federal claim.

## II. GRIEVANCE CLAIMS

Mr. Shidler alleges that he was denied the right to petition for a redress of grievances because they denied him access to the formal grievance process and did not respond to grievances that he filed. The Constitution does not require that a prison provide a formal grievance procedure nor adhere to their own procedures if they establish one. The violation of prison policy does not state a claim under § 1983. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir., 1999). "[T]he First Amendment right to petition the government for a redress of grievances protects a person's right to

complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance." *Jones v. Brown*, 300 F. Supp. 2nd 674, 679 (N.D. Ind. 2003). Therefore these claims will be dismissed.

## III. DENIAL OF ACCESS TO THE COURTS

Mr. Shidler alleges that he was denied access to the courts because he was denied access to the law library on many different occasions and because his legal materials were confiscated. There is no "abstract, freestanding right to a law library . . . [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court repudiated language in earlier case law and explained that state actors have no duty to assure that prisoners can litigate claims effectively once they have been raised in court. The right to access, goes no further than access.

> It must be acknowledged that several statements in *Bounds* went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present . . . . These statements appear to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them.

*Lewis v. Casey*, 518 U.S. at 354. *Lewis* only requires that an inmate be given access to file a complaint or appeal, but state actors have no duty to assure that

13

prisoners can litigate those claims effectively once they have been raised in court. That is to say, *Lewis* does not require that Mr. Shidler ever be permitted access to the law library, only that he be permitted to file a complaint or appeal.

Mr. Shidler does not allege, and based on his complaint and its attachments it would not be reasonable to infer, that he was denied the opportunity to file a complaint or appeal. Because he remained able to write to the court, he remained able to file a complaint, file an appeal, seek additional time to file or respond to motions, and request appointment of counsel. Though he alleges that he was denied copies, he does not allege that he was unable to send a single original stating that he was unable to obtain copies, therefore he was not denied access to the court. Though he alleges that he voluntarily dismissed a claim without prejudice because he was unable to litigate it effectively, the defendants have no obligation to empower him to litigate effectively. Finally, the confiscation of legal paperwork is merely a property loss if the papers are replaceable. *Hossman v. Spradlin*, 812 F.2d at 1022. Mr. Shidler does not allege, and based on this complaint it would not be reasonable to infer, that any unreturned legal papers were not otherwise replaceable. Therefore these claims will be dismissed.

## IV. PRELIMINARY INJUNCTION

Along with his complaint, Mr. Shidler also seeks a temporary restraining order and preliminary injunction which would require the defendants to provide him access to all Islamic count letters; three hours a week in the law library; the ability to use his religious name on mail; and limitations on searches of his cell and seizures of his property.

> A party seeking to obtain a preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted.

*Ty v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

All of the underlying claims in the complaint related to these injunctive requests have been dismissed in this screening order except for the one related to the use of a religious name on mail. For those dismissed claims, no injunctive relief is possible because Mr. Shidler has no chance of success on the merits on those claims. As for the use of his religious name on his mail: his likelihood of success on the merits is tenuous; if he is successful he can receive monetary compensation for this restriction (though it may be limited to nominal damages of $1.00); and he will not suffer irreparable harm because he retains access to the mail with his incarceration name and he does not allege that he is restricted from using his religious name inside his mail, only on the mailing label. Therefore the request for a TRO and a preliminary injunction will be denied.

## V. CONCLUSION

For the foregoing reasons, the court:

(1) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb and Administrative Assistant Chris Johnson in their individual capacities for monetary damages for violations of both the First Amendment free exercise of religion clause and RLUIPA (42 U.S.C. § 2000cc-1) for denying him communal worship from April 25, 2004 until approximately November 1, 2004 while he lived in "P" and "N" housing units;

(2) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb and Administrative Assistant Chris Johnson in their individual capacities for monetary damages, and in their official capacities for injunctive relief, for violations of both the free exercise clause of the First Amendment and RLUIPA (42 U.S.C. § 2000cc-1) for denying him the ability to use his religious name to send or receive mail;

(3) **DENIES** the request for a TRO and preliminary injunction (docket # 3);

(4) **DISMISSES** all other claims;

(5) **DISMISSES** Librarian Robert Moore, Grievance Specialist Sgt. Bowman, Assistant Superintendent Bruce Helming, Grievance Specialist K. Wright, Assistant to Superintendent Amy Clark, Chaplin Leslie, Counselor Kara Jones, Regional Director Linda VanNatta, Secretary R. Anderson, Correctional Officer Dennen, Administrative Assistant Lester Jeffries, Lt. Wagstaff, Correctional Officer Linville, Grievance Specialist Sgt. Duncan, Counselor D. Mann, 7-21-04 Grievance Committee Member John Doe 1, 7-21-04 Grievance Committee Member John Doe

2, 7-21-04 Grievance Committee Member John Doe 3, 9-7-05 Grievance Committee Member John Doe 4, 9-7-05 Grievance Committee Member John Doe 5, 9-7-05 Grievance Committee Member John Doe 6, Correctional Officer Fewell, Assistant Superintendent Sally Stevenson, Librarian Dr. B. Kasper, Superintendent John VanNatta, Counselor T. Heishman, and Case Work Manager T. Pretorious;

(6) **DIRECTS** the clerk to transmit the summons and USM-285 for Chaplin Babb and Administrative Assistant Chris Johnson to the United States Marshals Service along with a copy of this order and a copy of the complaint;

(7) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Chaplin Babb and Administrative Assistant Chris Johnson; and

(8) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Chaplin Babb and Administrative Assistant Chris Johnson respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**IT IS SO ORDERED.**

**ENTERED: January   3  , 2006**

                                           **S/ ALLEN SHARP**
                                           **ALLEN SHARP, JUDGE**
                                           **UNITED STATES DISTRICT COURT**