UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **GARRY EARL SHIDLER,** | ) |
| | ) |
|      **Plaintiff,** | ) |
| | )   **CAUSE NO. 3:05-CV-804 AS** |
|   v. | ) |
| | ) |
| **ROBERT MOORE,** *et al.* | ) |
| | ) |
|      **Defendants.** | ) |

### *OPINION AND ORDER*

Garry Earl Shidler, a *pro se* prisoner, submitted an amended complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Colley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right

>  acted under color of state law.  These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

## I. LEGAL STANDARDS

Mr. Shidler states that he is a Sunni Muslim and that various defendants prevented him from practicing his religion. He alleges that these acts violated his rights under the First and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).

### A. First Amendment

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988).

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted). "The 'free' exercise of religion thus is rather a misnomer in the prison setting." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988).

### B. Fourteenth Amendment

The Fourteenth Amendment equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions.

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

### C. RLUIPA

The Religious Land Use and Institutionalized Persons Act (RLUIPA) which provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

>    (1) is in furtherance of a compelling governmental interest; and
>    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA does not define substantial burden, but in a case interpreting the land use provisions of RLUIPA, the Seventh Circuit has stated that

> a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). The statute defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Nevertheless, a substantial burden may be justified if it is the least restrictive means of furthering a compelling governmental interest.

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.
>    . . .
> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005) (citations and quotation marks omitted).

D. Injunctive Relief

Mr. Shidler seeks injunctive relief as well as monetary compensation. Since filing this amended complaint, Mr. Shidler was transferred to the Westville Correctional Facility. As a result of that transfer, his injunctive relief claims are rendered moot. When "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (Quotation marks and citations omitted). It is certainly possible that he could be transferred back to the Miami Correctional Facility, since an inmate can be relocated at any time. *See Sandin v. Conner*, 515 U.S. 472 (1995). But the mere possibility of re-transfer is insufficient. The standard to be applied here is whether he is "likely to be retransferred". There is no reasonable basis that he is "likely to be retransferred" to the Miami Correctional Facility, therefore the injunctive relief claims will be dismissed. Because he states that he has included Superintendent John VanNatta solely for the purpose of injunctive relief, Superintendent VanNatta will be dismissed as well.

E. Compensatory Monetary Damages

> We agree that, absent a showing of physical injury, § 1997e(e) would bar a prisoner's recovery of compensatory damages for mental and emotional injury. But if that same prisoner alleges some other type of non-physical injury, the statute would not foreclose recovery, assuming that the damages sought were not "for" any mental or emotional injuries suffered. This view is not novel. Indeed, in the context of First Amendment claims, we have held explicitly that prisoners need not allege a physical injury to recover damages

5

>   because the deprivation of the constitutional right is itself a cognizable injury, regardless of any resulting mental or emotional injury. Using a similar rationale, several of our sister circuits have concluded that § 1997e(e) does not bar all recovery for violations of due process or the right to privacy. These decisions reflect an emerging view that § 1997e(e), as the plain language of the statute would suggest, limits recovery "for mental and emotional injury," but leaves unaffected claims for nominal and punitive damages, which seek to remedy a different type of injury.

*Calhoun v. Detella*, 319 F.3d 936, 940-41 (7th Cir. 2003) (Quotation marks, square brackets, and citations omitted). Therefore, 42 U.S.C. §1997e(e) does not restrict recovery for violations of either the First or Fourteenth Amendments, but it does limit monetary damages for RLUIPA claims because they are statutory, not constitutional claims.

>   No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 USCS § 1997e(e). Therefore monetary damages are unavailable for a RLUIPA claim unless the plaintiff can demonstrate physical injury.

### F. Nominal Damages

Where compensatory monetary damages are not available,

>   [N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.

*Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999)

### G. Punitive Damages

> [P]unitive damages are never awarded as a matter of right; the finder of fact, after reviewing the entire record, is called upon to make a "moral judgment" that the unlawful conduct warrants such an award to punish the wrongdoer and deter others. Punitive damages are available in § 1983 cases only upon a showing of evil motive or intent, or reckless or callous indifference to the federally protected rights of others.

*Kyle v. Patterson*, 196 F.3d 695, 697-698 (7th Cir. 1999) (quotation marks, citations and ellipsis omitted).

### H. Declaratory Relief

"When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive." *Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004). Here, a declaratory judgment is only a predicate to monetary damages for those claims related to prison policies which have been subsequently repealed or rendered moot when Mr. Shidler was no longer subject to them because he was transferred. "The fact that new regulations had been adopted by prison officials subsequent to the factual events of this case, does not moot plaintiff's claim for either declaratory or monetary relief." *Black v. Brown*, 513 F.2d 652, 655 (7th Cir. 1975).

## II. CLAIMS

### A. Prayer Oil

Mr. Shidler alleges that Salley Stevenson created and enforced a policy prohibiting the use of prayer oil. Giving him the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, this states a claim for

7

declaratory relief as well as monetary and punitive damages for a violation of the First and Fourteenth Amendments. It also states a claim for declaratory relief as well as nominal and punitive damages for a violation of RLUIPA.

Mr. Shidler alleges that when the prayer oil policy was changed, only one type of oil was available and that he was allergic to it. He alleges that Salley Stevenson refused to permit him to purchase an alternative to which he was not allergic. Giving him the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, this states a claim for monetary and punitive damages for a violation of the First and Fourteenth Amendments. It also states a claim for nominal and punitive damages for a violation of RLUIPA.

### B. Communal Worship

Mr. Shidler alleges that Chaplin Babb, Chaplin Leslie, and Chris Johnson denied him communal worship while he was housed in the "P", "L", "N", and "E" Housing Units even though Christians were permitted communal worship. Giving him the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, this states a claim for monetary and punitive damages for a violation of the First and Fourteenth Amendments. It also states a claim for nominal and punitive damages for a violation of RLUIPA.

### C. Ramadan

Mr. Shidler alleges that Chaplin Babb, Chaplin Leslie, and Chris Johnson denied him the ability to participate in Ramadan activities. Giving him the benefit

8

of the inferences to which he is entitled at the pleading stage of this proceeding, this states a claim for monetary and punitive damages for a violation of the First and Fourteenth Amendments. It also states a claim for nominal and punitive damages for a violation of RLUIPA.

### D. Official Record of Religious Preference

Mr. Shidler alleges that Chaplains Babb and Leslie classified him as a Christian for the purpose of preventing him from practicing his religion. Giving him the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, this states a claim for monetary and punitive damages for a violation of the First and Fourteenth Amendments. It also states a claim for nominal and punitive damages for a violation of RLUIPA.

### E. Religious Name

Mr. Shidler alleges that Sally Stevenson and Chris Johnson prevented him from practicing him religion by enforcing a policy which prohibits him from using his religious name on his mail. Mr. Shidler does not allege, and based on this complaint it is not reasonable to infer, that he has legally changed his name in an Indiana court. Under the First Amendment, a prison is not obligated to accept his new name, until he has legally changed it, even if he adopted it for sincere religious reasons. *Azeez v. Fairman*, 795 F.2d 1296 (7th Cir. 1986). Therefore the First Amendment claim must be dismissed. Neither has he alleged that members

of other religious groups are able to change their names more easily. Therefore the Fourteenth Amendment claim must also be dismissed.

Though knowing the valid names of inmates and keeping track of them are clearly compelling governmental interests, it is not clear that requiring a legal name change in state court is the least restrictive means of furthering those and perhaps other legitimate state interests. Nevertheless, the complaint does not allege, and it is not reasonable to infer that the refusal to accept his religious name was done with an evil motive or intent. Rather it merely alleges that it was done pursuant to a policy which is otherwise facially neutral. Therefore no punitive damages claim can be pursued here. Giving him the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, these allegations state a claim for declaratory relief and nominal damages for a violation of RLUIPA.

### III. CONCLUSION

For the foregoing reasons, the court:

(1) **LIFTS** the stay imposed by this court's order of March 24, 2006;

(2) **GRANTS** Garry Earl Shidler leave to proceed against Salley Stevenson in her individual capacity for declaratory relief as well as monetary and punitive damages for violations of the First and Fourteenth Amendments for denying him prayer oil;

(3) **GRANTS** Garry Earl Shidler leave to proceed against Salley Stevenson in her individual capacity for declaratory relief as well as nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him prayer oil;

(4) **GRANTS** Garry Earl Shidler leave to proceed against Salley Stevenson in her individual capacity for monetary and punitive damages for violations of the First and Fourteenth Amendments for prohibiting him from purchasing prayer oil to which he was not allergic;

(5) **GRANTS** Garry Earl Shidler leave to proceed against Salley Stevenson in her individual capacity for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for prohibiting him from purchasing prayer oil to which he was not allergic;

(6) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for monetary and punitive damages for violations of the First and Fourteenth Amendments for denying him communal worship while he was housed in the "P", "L", "N", and "E" Housing Units even though Christians were permitted communal worship;

(7) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him

communal worship while he was housed in the "P", "L", "N", and "E" Housing Units even though Christians were permitted communal worship;

(8) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for monetary and punitive damages for violations of the First and Fourteenth Amendments for denying him the ability to participate in Ramadan activities;

(9) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him the ability to participate in Ramadan activities;

(10) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb and Chaplin Leslie in their individual capacities for monetary and punitive damages for violations of the First and Fourteenth Amendments for classifying him as a Christian for the purpose of preventing him from practicing his religion;

(11) **GRANTS** Garry Earl Shidler leave to proceed against Chaplin Babb and Chaplin Leslie in their individual capacities nominal and punitive damages for violations RLUIPA (42 U.S.C. § 2000cc-1) for classifying him as a Christian for the purpose of preventing him from practicing his religion;

(12) **GRANTS** Garry Earl Shidler leave to proceed against Salley Stevenson and Chris Johnson in their individual capacities for declaratory relief and nominal damages for violations RLUIPA (42 U.S.C. § 2000cc-1) for preventing him from

practicing him religion by enforcing a policy which prohibits him from using his religious name on his mail;

(13) **DENIES** the requests for injunctive relief (docket # 22);

(14) **DISMISSES** all other claims;

(15) **DISMISSES** Superintendent John VanNatta;

(16) **DIRECTS** the clerk to transmit the summons and USM-285 for Chaplin William Babb, Chaplin Leslie, Salley Stevenson, and Chris Johnson to the United States Marshals Service along with a copy of this order and a copy of the complaint;

(17) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Chaplin William Babb, Chaplin Leslie, Salley Stevenson, and Chris Johnson; and

(18) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Chaplin William Babb, Chaplin Leslie, Salley Stevenson, and Chris Johnson respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**IT IS SO ORDERED.**

**ENTERED: August   9  , 2006**

                              S/ ALLEN SHARP
                              **ALLEN SHARP, JUDGE**
                              **UNITED STATES DISTRICT COURT**