UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GARRY EARL SHIDLER,                )
                                   )
                    Plaintiff      )
                                   )      CAUSE NO.  3:05-CV-804 RM
          v.                       )
                                   )
ROBERT MOORE, *et al.*             )
                                   )
                    Defendants     )

OPINION AND ORDER

Garry Earl Shidler, a *pro se* prisoner, filed this lawsuit alleging various violations of

his religious liberties. The parties filed cross motions for summary judgment that are now

ripe. The standard for reviewing a summary judgment motion is the same regardless of

whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th

Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial. In such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of proof concerning an essential
> element of the nonmoving party's case necessarily renders all other facts
> immaterial. The moving party is "entitled to a judgment as a matter of law"
> because the nonmoving party has failed to make a sufficient showing on an
> essential element of her case with respect to which she has the burden of
> proof.

Celotex v. Catrett, 477 U.S. 317, 322-323 (1986).

The defendants argue that RLUIPA provides only for injunctive relief, not damages.

> This court ruled, in its Opinion and Order of August 9, 2006, that the
> plaintiff could seek nominal and punitive damages for violation of RLUIPA.
> This was incorrect, as RLUIPA does not give rise to an action for damages.
> Only injunctive relief is available under that act.

Memorandum in Support of Summary Judgment at 10, docket # 91. In support of their

argument, they cite to an unpublished district court opinion, Agrawal v. Briley, No. 02 C

6807, 2006 WL 3523750, 2006 U.S. Dist. LEXIS 88697 (N.D. Ill. Dec. 6, 2006). They contend

that though Agrawal does not support their argument, its result is incorrect because the

statutory analysis of the Agrawal court was incomplete.

Agrawal is not binding authority. But if it was, its ruling would not result in a

dismissal of the non-injunctive RLUIPA claims. Though the defendants argue that RLUIPA

could be interpreted differently, the defendants have not cited to any binding authority

demonstrating that Judge Sharp's ruling on August 9, 2006 was incorrect.

> The authority of a district judge to reconsider a previous ruling in the
> same litigation, whether a ruling made by him or by a district judge
> previously presiding in the case, including (because the case has been
> transferred) a judge of a different court, is governed by the doctrine of the
> law of the case, which authorizes such reconsideration if there is a
> compelling reason, such as a change in, or clarification of, law that makes
> clear that the earlier ruling was erroneous.

Santamarina v. Sears, 466 F.3d 570, 571-572 (7th Cir. 2006). The defendants have not

identified a compelling reason for altering this court's earlier ruling. They have not

identified either a change in, or a clarification of, the law. Neither does their suggestion that

RLUIPA could be interpreted differently demonstrate that the interpretation applied by

Judge Sharp is clearly erroneous. Therefore, based on the law of the case doctrine, the court

declines to reconsider its prior ruling. Even if the court were to independently analyze the question of what relief is available in a RLUIPA claim, nothing in the defendants' brief would persuade it to reach a different conclusion than the one it did in this case.

In the screening order of August 9, 2006, this court granted Mr. Shidler leave to proceed against:

1. Salley Stevenson in her individual capacity for declaratory relief as well as monetary and punitive damages for violations of the First and Fourteenth Amendments for denying him prayer oil;

2. Salley Stevenson in her individual capacity for declaratory relief as well as nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him prayer oil;

3. Salley Stevenson in her individual capacity for monetary and punitive damages for violations of the First and Fourteenth Amendments for prohibiting him from purchasing prayer oil to which he was not allergic;

4. Salley Stevenson in her individual capacity for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for prohibiting him from purchasing prayer oil to which he was not allergic;

5. Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for monetary and punitive damages for violations of the First and Fourteenth Amendments for denying him communal worship while he was housed in the "P", "L", "N", and "E" Housing Units even though Christians were permitted communal worship;

6. Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him communal worship while he was housed in the "P", "L", "N", and "E" Housing Units even though Christians were permitted communal worship;

7. Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for monetary and punitive damages for violations of the First and Fourteenth Amendments for denying him the ability to participate in Ramadan activities;

8. Chaplin Babb, Chaplin Leslie, and Chris Johnson in their individual capacities for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him the ability to participate in Ramadan activities;

> 9. Chaplin Babb and Chaplin Leslie in their individual capacities for monetary and punitive damages for violations of the First and Fourteenth Amendments for classifying him as a Christian for the purpose of preventing him from practicing his religion;
>
> 10. Chaplin Babb and Chaplin Leslie in their individual capacities for nominal and punitive damages for violations RLUIPA (42 U.S.C. § 2000cc-1) for classifying him as a Christian for the purpose of preventing him from practicing his religion; and
>
> 11. Salley Stevenson and Chris Johnson in their individual capacities for declaratory relief and nominal damages for violations RLUIPA (42 U.S.C. § 2000cc-1) for preventing him from practicing his religion by enforcing a policy which prohibits him from using his religious name on his mail.

See docket # 27 at 10-13.

### 1. Denial of Prayer Oil in violation of the First Amendment

Salley Stevenson contends that Mr. Shidler cannot present any evidence indicating that she knew that prayer oil was required for the practice of Islam. She states that she "issued a memorandum on June 12, 2003, prohibiting offenders from possessing oils" because of security issues and limited resources, but only after determining that prayer oil was not required by any religion. Stevenson Declaration at ¶¶ 4-12, docket # 91-7 at 1-2.

*See also* Stevenson Memo of June 12, 2003, docket # 53-6 at 15.

> 8. Because of the security issues arising when many inmates possess substantial quantities of oil, the chaplains were required to distribute it to offenders in small quantities.
>
> 9. That restriction on distribution used a great deal of scarce human resources, and I investigated whether any religion required its followers to possess prayer oil.
>
> 10. I turned for guidance to the "Handbook of Religious Beliefs and Practices" issued by the Indiana Department of Correction, and understood that book to say that the use of oils was recommended but not required.
>
> 11. Based on that understanding, and keeping in mind the resources used by the method of distribution, I decided to prohibit offenders from possessing oils.

4

Stevenson Declaration at ¶¶ 8-11, docket # 91-7 at 2.

Mr. Shidler responds by pointing to two cases and an Indiana Department of

Correction administrative procedure in an attempt to demonstrate that Salley Stevenson

knew that prayer oil is fundamental to Islam.

> [T]he Plaintiff would like to point out that this Honorable Court had
> instructed Defendant Stevenson in <u>Burks-Bey v. Stevenson</u>, 328 F. Supp. 2d
> 928 ([N.D. Ind.] 2004) as well as in <u>Baltoski v. Pretorius</u>, 291 F. Supp. 2d 807
> (N.D. Ind. 2003) that prayer oils are fundamental to Islam. In both cases
> Defendant Stevenson was found to have violated the Plaintiff's rights by
> denying prayer oils, yet she still decided in 2004 that they were not
> fundamental to Islam, completely disregarding this court's previous opinion.

Shidler Response Memorandum at 24-25, docket # 105-2.

Ms. Stevenson was a defendant in those two cases, but Mr. Shidler misunderstands

this court's rulings in those cases. Mr. Burks-Bey was not a Muslim, he was a member of

the Moorish Science Temple of America (MSTA). In <u>Burks-Bey</u>, the court didn't make a

determination about the fundamental practices of Islam, rather it merely contrasted what

might be the fundamental practices of other religions to that of MSTA.

> *Even if* prayer oils are fundamental to Islam, *even if* kippot are fundamental
> to Judaism, *even if* holy water is fundamental to Catholicism, none of these
> items are fundamental to MSTA.

<u>Burks-Bey v. Stevenson</u>, 328 F. Supp. 2d 928, 934 (N.D. Ind. 2004) (emphasis added). The

court carefully selected the words "even if" because it wasn't making a determination

about Islam, Judaism, or Catholicism; it was merely contrasting them to MSTA.

Mr. Baltoski was Muslim, but in <u>Baltoski</u>, the court did not hold that prayer oil was fundamental to Islam. The opinion cited by Mr. Shidler merely permitted Mr. Baltoski the opportunity to try to prove it.

> Giving Mr. Baltoski the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that the confiscation of Mr. Baltoski's musk oil was reasonably related to a legitimate penological interest and did not infringe upon the First Amendment's free exercise clause.

<u>Baltoski v. Pretorius</u>, 291 F. Supp. 2d 807, 810 (N.D. Ind. 2003). Neither did the court ultimately conclude that prayer oil was fundamental in the ensuing litigation. Instead, that case was dismissed without prejudice because Mr. Baltoski abandoned it and did not continue to prosecute his claim when he did not keep the court apprised of his mailing address.

Indiana Department of Correction administrative procedure 01-03-101 requires that,

> When a Facility Head/designee considers that an authorized religious practice, item or symbol should be restricted based upon facility mission, identifiable security and/or management concerns, the Facility Head/designee shall notify the Director of the request for an exemption.

Docket # 53-6 at 19. Mr. Shidler argues that Ms. Stevenson did not request an exemption before she banned prayer oil. This appears to be true, but in the context of a First Amendment analysis, it is irrelevant. The Constitution does not require central office approval of the decisions of a facility head or designee, and  nothing in this administrative procedure instructed her that prayer oil was required for the practice of Islam. Therefore summary judgment will be granted in favor of the defendant and against the plaintiff as to the denial of prayer oil based upon a violation of the First Amendment.

6

<u>1-1. Denial of Prayer Oil in violation of the Fourteenth Amendment</u>[1]

Without evidence that Ms. Stevenson knew that prayer oil was required for the practice of Islam, Mr. Shidler cannot demonstrate that she knew that she was treating his religious exercise differently than that of anyone else. Therefore, summary judgment will be granted in favor of Sally Stevenson, and against Mr. Shidler on this claim.

<u>2. Denial of Prayer Oil in Violation of RLUIPA</u>

As with the First Amendment denial of prayer oil claim, Ms. Stevenson contends that Mr. Shidler is unable to present any evidence indicating that she knew that prayer oil was required for the practice of Islam. Though this argument prevailed as to the alleged First Amendment violation, RLUIPA is different.

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Therefore whether Islam requires prayer oil is not relevant to a RLUIPA

---

[1] Section numbers correspond to the paragraph numbers in the screening order quoted above. In the screening order, the First and Fourteenth Amendment claims were included in the same paragraphs, but here they are separately designated as paragraphs 1 and 1-1, 3 and 3-1, 5 and 5-1, 7 and 7-1, and 9 and 9-1.

analysis. Ms. Stevenson states that she knew that prayer oil is recommended for use by Muslims. For RLUIPA, that is enough to qualify prayer oil as a religious exercise.

Ms. Stevenson also contends that the statute of limitations bars this claim because she banned prayer oil with a memo she issued on June 12, 2003. She argues that because this claim wasn't raised until the amended complaint was filed on March 24, 2006, it is beyond the two year statute of limitations. In her answer, Ms. Stevenson raised five affirmative defenses, but she didn't assert a statute of limitation defense. Docket # 37 at 11-12. Even if she had, she could not have prevailed on it. Though the memo was issued more than two years before the filing of the amended complaint, Ms. Stevenson does not dispute that she continued to prohibit the use of prayer oil after that date. Indeed, that was the memo's very purpose. The memo is evidence of her decision, but it is not the act that forms the basis for this claim. Rather it is her ongoing act of prohibiting prayer oil that is the basis for this claim. That is to say, even if that memo had never been issued (or if it had been issued by her predecessor decades earlier), if she acted to prohibit prayer oil within the statute of limitation, then she would have no such defense available to her.

Ms. Stevenson may be able to demonstrate at trial that banning oil was the least restrictive means of furthering a compelling governmental interest, but she has not presented that claim here. Indeed, in light of the subsequently changed policy permitting oil, it is unclear at this time how she might do so. Nevertheless, it is her motion for summary judgment that is now before the court and as to this claim it must be denied.

Mr. Shidler's motion for summary judgment contends that that the denial of prayer oil violated RLUIPA and his summary judgment presents this claim as a basis for summary judgment (docket # 53-2 at 14), but he cannot prevail on his motion because his Amended Statement of Undisputed Facts is substantively deficient.[2] It doesn't state that the prohibition of prayer oil created a substantial burden on the exercise of his religion. Therefore his motion for summary judgment as to this claim must be denied.

### 3. Denial of Non-Allergic Prayer Oil in violation of the First Amendment

At some point, the policy was changed and prayer oil was available for purchase from the commissary. Mr. Shidler alleges that he was allergic to that prayer oil and could not obtain an alternative to which he was not allergic. Ms. Stevenson contends that Mr. Shidler is unable to present any evidence indicating that she knew that he was allergic to the prayer oil that was available. In response, Mr. Shidler argues that Ms. Stevenson admitted in her answer that she prevented him from purchasing an alternative prayer oil. He cites to page 2, paragraph 5 of the answer which states,

> As to ¶ 5 of the amended complaint, the defendants ADMIT the allegations of the second sentence as to the circumstances known by the defendants, but they DENY those allegations as to all circumstances that did, or could, exist; and they are without sufficient information to form a belief as to the truth of the remaining allegations of that paragraph and therefore DENY them.

---

[2] Though the defendants contend that the Statement of Undisputed Facts (docket # 53-4) is procedurally deficient "because it is in improper form and is incorrect" because it does not contain citations "to the materials upon which the statement is based" (Defendants Response at 1and 2, docket # 92), the Amended Statement of Undisputed Facts cured those procedural deficiencies (docket # 94).

Answer at ¶ 5, docket # 37. Paragraphs 4 and 5 of the amended complaint states,

> 4) The facility did begin to sell a type of Islamic oil on its commissary, however the plaintiff is highly allergic to this type of oil and has not been allowed the option to purchase an alternative at his expense.

> 5) The plaintiff has spoken with the facility superintendent, John VanNatta, and he state he seen no reasons the plaintiff can not order oil through the chapel. However when the plaintiff attempts to do so he is instructed by Chaplin Babb per Salley Stevenson no one is allowed to order oil.

Amended Complaint at ¶ 5, docket # 22.

Ms. Stevenson admitted that she prohibited the purchase of alternative prayer oil, but she hasn't admitted that she knew that Mr. Shidler was allergic to the available prayer oil. Without evidence showing that Ms. Stevenson knew that he was allergic to the available prayer oil, Mr. Shidler cannot demonstrate that she knew that she was abridging his practice of religion. Summary judgment will be granted in favor of Ms. Stevenson and against Mr. Shidler on this claim.

3-1. Denial of Non-Allergic Prayer Oil in violation of the Fourteenth Amendment

Without evidence showing that Ms. Stevenson knew of his allergy, Mr. Shidler cannot demonstrate that she knew that she was treating his religious exercise differently than that of anyone else. Therefore, summary judgment will be granted in favor of Ms. Stevenson and against Mr. Shidler on this claim.

<u>4. Denial of Non-Allergic Prayer Oil in violation of RLUIPA</u>

Without evidence showing that Ms. Stevenson knew of his allergy, Mr. Shidler cannot demonstrate that she was abridging his practice of religion. Therefore, summary judgment will be granted in favor of Ms. Stevenson and against Mr. Shidler on this claim.

<u>5. Denial of Communal Worship in violation of the First Amendment</u>

A.

Chaplin Babb, Chaplin Leslie, and Chris Johnson allege that Mr. Shidler cannot present any evidence indicating that they violated the First Amendment by preventing him from engaging in communal worship while he was housed in the "P" Housing Unit from April 25, 2004 to June 21, 2004. They state that during those dates, the "P" Housing Unit, for security reasons, was a forced idle dorm that prohibited all offenders from many communal activities, including worship. They state that they didn't make this decision and that they didn't have the ability to provide communal worship.

> 3. I did not prevent Mr. Shidler from practicing Islam outside his cell in P Housing Unit.
> 4. The restriction on offenders' ability to engage in religious exercises outside their cells in that unit during part of 2004 was imposed as a security measure by custody staff and the administration of the facility, not by chaplains.

Babb Declaration at 1, docket # 91-3. *See also* Leslie Declaration at ¶ 3, docket # 91-6.

> 5. My area of responsibility when I worked at MCF did not include decisions regarding whether to permit communal worship for offenders in P Housing Unit or any other housing unit at MCF.

11

Johnson Declaration at 1, docket # 91-5.

Mr. Shidler responds that in a memo dated February 3, 2003 from Assistant Superintendent Sally Stevenson to Offender Ali A. Hakim, she stated that "Religious services for offenders assigned to the Forced Idle Unit will be held within the housing unit." Though his memo addresses events in early 2003, it is too old to create a genuine issue of fact as to policy in the "P" Housing Unit more than a year later.

Mr. Shidler notes that Chaplain Babb and Chaplain Leslie state in their interrogatory answers that "when he was placed in P-Housing Unit, it was necessary to place him on a different count letter." Babb Interrogatory Answers at ¶ 4, docket # 105-4 at 17 and # 78 at 2; Leslie Interrogatory Answers at ¶ 10, docket # 105-4 at 31 and #79 at 3. This is evidence that count letters were created for the "P" Housing Unit, but it is not evidence that these defendants, rather than someone else, prohibited communal worship in that housing unit. Indeed, by creating count letters for the "P" Housing Unit, it appears that these defendants acted to facilitate communal worship to the extent that they were able even though they knew that it was prohibited at the time. Nevertheless, without evidence that these defendants prevented him from engaging in communal worship, summary judgment must be granted for the defendants and against Mr. Shidler as to this part of this claim.

## B.

Chaplin Babb, Chaplin Leslie, and Chris Johnson argue that Mr. Shidler cannot present any evidence indicating that they violated the First Amendment by preventing him from engaging in communal worship while he was housed in the "P" Housing Unit from

July 21, 2004 to August 6, 2004. They say that during those dates, the "P" Housing Unit had

been reclassified to permit communal worship by inmates housed there. Therefore they did

not know that Mr. Shidler was unable to engage in communal worship.

> 6. In July of 2004, MCF staff made arrangements for offenders housed in P Housing Unit to engage in corporate religious services in the Phase II Offender Services Building, and it was my understanding that Muslims in P Housing Unit were therefore able to participate in those services from that time forward.
> . . .
> 8. If Mr. Shidler was not able to participate in corporate worship during this time in P Housing Unit from July 21, 2004, to August 6, 2004, I was not aware of it.

Babb Declaration at 2, docket # 91-3. *See also* Leslie Declaration at ¶ ¶ 5 and 6, docket # 91-6.

> 6. In August 2004, I received grievance MCF 2004-5-384, in which Garry Shidler said he was being denied religious services in P Housing Unit.
> 7. I investigated that issue and learned that religious services had been suspended for offenders in that unit but in August 2004 were being made available to those offenders once more, and I informed Mr. Shidler of that fact on August 20, 2004.
> 8. Further, I believe that Mr. Shidler was no longer assigned to P Housing Unit by the time I reviewed his grievance so that there was nothing I could do to remedy his complaint.

Johnson Declaration at 2, docket # 91-5.

Mr. Shidler responds that Chaplain Babb and Chaplain Leslie state in their

interrogatory answers that,

> when he was placed in P-Housing Unit, it was necessary to place him on a different count letter. But when the OIS was checked, it listed him as General Christian, which made him ineligible to be placed on the Islamic count letter for P-Housing Unit.

13

Babb Interrogatory Answers at ¶ 4, docket # 105-4 at 17 and # 78 at 2; Leslie Interrogatory Answers at ¶ 10, docket # 105-4 at 31 and #79 at 3.

Based on the declarations and interrogatory answers of the chaplains, it appears that they believed that communal worship was possible in the "P" Housing Unit during this time, but they didn't believe that Mr. Shidler was a Muslim. This doesn't demonstrate that they knew that they were preventing him from engaging in communal worship with fellow believers; it merely demonstrates that they knew that they were preventing him from engaging in communal worship with a different faith group. That presents no violation of the First Amendment. Mr. Shidler raises issues about how and why he was classified as a General Christian and those claims are addressed later in this opinion. As to this claim, he has not presented evidence that any of these defendants prevented him from engaging in communal worship with the religious community of which they believed him to be a member. Therefore summary judgment must be granted in favor of the defendants and against the plaintiff, as to this part of this claim.

C.

Chaplin Babb, Chaplin Leslie, and Chris Johnson allege that Mr. Shidler cannot present any evidence indicating that they violated the First Amendment by preventing him from engaging in communal worship while he was housed in the "L" Housing Unit from August 6, 2004 to September 6, 2004; in the "N" Housing Unit from September 6, 2004 to November 3, 2004; or in the "E" Housing Unit from November 3, 2004 to about December 9, 2004. They state that during those dates, Indiana Department of Correction records

indicated that Mr. Shidler was a Christian and therefore he was not permitted to attend

Muslim communal worship.

> 24. When Mr. Shidler did meet with me [on December 9, 2004] and sign the "Statement of Offender's Religious Preference" form, I immediately signed it and precessed it, and Mr. Shidler was promptly placed on the Muslim count letter.

Babb Declaration at 3-4, docket # 91-3. *See also* Leslie Declaration at ¶ 10 and 13, docket #

91-6.

> 10. In late January 2005, I received grievance MCF 2004-12-7, in which Garry Shidler complained about delay in getting his name on the Islamic count letter.
> . . .
> 12. It was my understanding that Mr. Shidler had met with the chaplain in December 2004, had followed the proper procedure, and had been placed on the Islamic count letter, so that there was no further action needed.

Johnson Declaration at 2, docket # 91-5.

In addition to the prior responses raised by Mr. Shidler, he also responds that he

wasn't permitted to change his religion in accordance with Indiana Department of

Correction policy. Refusing to change his religion is not a part of any of the many claims

on which he is proceeding in this case. Furthermore, a federal claim must be premised on

the violation of a federal right, not a prison policy. *See* Alvarado v. Litscher, 267 F.3d 648,

651 (7th Cir. 2001). As to this claim, he has not presented any evidence that any of these

defendants prevented him from engaging in communal worship with the religious

community of which they believed him to be a member. Summary judgment must be

granted in favor of the defendants and against the plaintiff as to this part of this claim.

15

### 5-1. Denial of Communal Worship in violation of the Fourteenth Amendment

Chaplin Babb, Chaplin Leslie, and Chris Johnson allege that Mr. Shidler cannot present any evidence indicating that they permitted Christians to engage in communal worship while preventing Muslims from doing so during 2004.

> 5. If Christians, or members of any other religious group, were treated differently in P Housing Unit in 2004 than the followers of any other religion, including Muslims, I was not aware of it.

Babb Declaration at 2, docket # 91-3. *See also* Leslie Declaration at ¶ 4, docket # 91-6; and Johnson Declaration at ¶¶ 5 and 9, docket # 91-5.

Mr. Shidler argues that the defendants would have to know that Christians were treated differently because a chaplain must supervise all communal worship. Because Mr. Shidler's argument doesn't cite to any evidence demonstrating either that there was disparate treatment or that any of these defendants had knowledge of it, this argument is merely circular reasoning. That is to say, he assumes that different treatment occurred and then argues that the defendants must have known about it because they were present and therefore must have seen it when it happened. The flaw with this logic is that there is no evidence of different treatment and no proof that they saw anything. Summary judgment must be granted in favor of the defendants and against the plaintiff as to this claim.

<u>6. Denial of Communal Worship in violation of RLUIPA</u>

A.

As with the First Amendment denial of communal worship claim, Chaplin Babb, Chaplin Leslie, and Chris Johnson allege that Mr. Shidler cannot present any evidence indicating that they violated RLUIPA by preventing him from engaging in communal worship while he was housed in the "P" Housing Unit from April 25, 2004 to June 21, 2004. The analysis for this part of this claim is the same as the claim based on a violation of the First Amendment, as explained in section 5.A. *supra*. Without evidence that these defendants prevented him from engaging in communal worship, summary judgment must be granted for the defendants and against Mr. Shidler as to this part of this claim.

B.

As with the First Amendment denial of communal worship claim, Chaplin Babb, Chaplin Leslie, and Chris Johnson allege that Mr. Shidler cannot present any evidence indicating that they violated RLUIPA by preventing him from engaging in communal worship while he was housed in the "P" Housing Unit from July 21, 2004 to August 6, 2004. Mr. Shidler responds that Chaplain Babb and Chaplain Leslie state in their interrogatory answers that,

> when he was placed in P-Housing Unit, it was necessary to place him on a different count letter. But when the OIS was checked, it listed him as General Christian, which made him ineligible to be placed on the Islamic count letter for P-Housing Unit.

17

Babb Interrogatory Answers at ¶ 4, docket # 105-4 at 17 and # 78 at 2; Leslie Interrogatory Answers at ¶ 10, docket # 105-4 at 31 and #79 at 3.

These interrogatory answers are evidence that Chaplain Babb and Chaplain Leslie knew Mr. Shidler wanted to attend Muslim Communal worship services at a time when their declarations state that such services were available to inmates in the "P" Housing Unit. "The chaplain's office places offenders on count letters." Babb Declaration at ¶ 15, docket # 91-3 at 3. Thus, there is evidence that Chaplain Babb and Chaplain Leslie could have placed Mr. Shidler on the count letter, and that – but for their decision not to – he would have been able to have attended Muslim communal worship.

Though preventing an inmate from engaging in communal worship with a different faith group doesn't violate the First Amendment, RLUIPA is different. RLUIPA defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Whether Mr. Shider was Muslim, then, is not relevant to a RLUIPA analysis. RLUIPA permits an inmate, even a General Christian, to incorporate attendance at Islamic communal worship into his religious practice. Though Chaplain Babb and Chaplain Leslie might be able to demonstrate at trial that preventing members of one religion from attending the communal worship of other religious groups is the least restrictive means of furthering a compelling governmental interest, they have neither presented nor proven that argument here.

The evidence presented defeats the defendants' summary judgment motion as to this part of this claim in regard to Chaplain Babb and Chaplain Leslie, but not as to Chris Johnson.

> 5. My area of responsibility when I worked at MCF did not include decisions regarding whether to permit communal worship for offenders in P Housing Unit or any other housing unit at MCF.

Johnson Declaration at 1, docket # 91-5. Mr. Shidler has presented no evidence that Chris Johnson had the ability to place him on the count letter, so there is no evidence that Chris Johnson prevented Mr. Shidler from attending Muslim communal worship. Summary judgment will be granted for Chris Johnson and against Mr. Shidler on this part of this claim.

Mr. Shidler also seeks summary judgment on this part of this claim (docket # 53-2 at 10-11), but he can't prevail on his motion because his Amended Statement of Undisputed Facts is substantively deficient because it does not state that denying him attendance at Muslim communal worship created a substantial burden on the exercise of his religion. His summary judgment motion as to this claim must be denied.

## C.

As with the First Amendment denial of communal worship claim, Chaplin Babb, Chaplin Leslie, and Chris Johnson contend that Mr. Shidler cannot present any evidence indicating that they violated RLUIPA by preventing him from engaging in communal worship while he was housed in the "L" Housing Unit from August 6, 2004 to September

6, 2004; in the "N" Housing Unit from September 6, 2004 to November 3, 2004, or in the "E" Housing Unit from November 3, 2004 to about December 9, 2004. They state that during those dates, Indiana Department of Correction records indicated that Mr. Shidler was a Christian and so was not permitted to attend Muslim communal worship.

The analysis of events on these dates and in these housing units is the same as it was for the RLUIPA claim arising in "P" Housing Unit from April 25, 2004 to June 21, 2004, as explained in section 6.B., *supra*. RLUIPA permits an inmate, even a General Christian, to incorporate into his religious practice, attendance at Islamic communal worship. As before, though Chaplain Babb and Chaplain Leslie might be able to demonstrate at trial that preventing members of one religion from attending the communal worship of other religious groups is the least restrictive means of furthering a compelling governmental interest, they have not presented that argument, nor proven it, here.

Thus the defendants' summary judgment motion must be denied as to this part of this claim in regard to Chaplain Babb and Chaplain Leslie, but not as to Chris Johnson. So too, Mr. Shidler's motion for summary judgment on this part of this claim must be denied because his Statement of Undisputed Facts does not state that denying him attendance at Muslim communal worship created a substantial burden on the exercise of his religion.

<u>7. Denial of Ramadan Activities in Violation of the First Amendment</u>

<u>7-1. Denial of Ramadan activities in violation of the Fourteenth Amendment</u>

<u>8. Denial of Ramadan activities in violation of RLUIPA</u>

Chaplin Babb, Chaplin Leslie, and Chris Johnson allege that Mr. Shidler didn't file a grievance alleging that he was denied the opportunity to participate in Ramadan activities. "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statute requires that Mr. Shidler utilize whatever administrative grievance system was available to him before he can file a lawsuit in federal court. In support of this affirmative defense, the defendants have submitted the declaration of Amy Clark.

> I have found one grievance filed by Mr. Shidler that mentions that he was not permitted to participate in Ramadan during 2004, but Mr. Shidler did not complain about that in that grievance, MCF 2004-12-7, he stated that he had accepted being told he would not be added to the Muslim count letter until after Ramadan but did not accept being kept off the count letter when he applied on the last day of Ramadan.

Clark Declaration at ¶ 28, docket # 91-4 at 5.

In response, Mr. Shidler argues that, "The plaintiff continuously grieved the denial of Islamic services one of which is Ramadan." While is it true that Ramadan is an Islamic religious holiday, Mr. Shidler hasn't identified any grievance in which he sought to participate in the celebration of it. Because he did not exhaust the administrative grievance

process as to these claims, the defendants' motion for summary judgment as to all claims related to Ramadan must be granted.

<u>9. Classification as a Christian in violation of the First Amendment</u>

<u>9-1. Classification as a Christian in violation of the Fourteenth Amendment</u>

<u>10. Classification as a Christian in violation of RLUIPA</u>

Chaplain Babb and Chaplain Leslie contend that Mr. Shidler cannot present any evidence that they classified him as a Christian. "I did not list Mr. Shidler on the OIS as preferring Christianity, nor did I cause him to be so listed." Babb Declaration at ¶ 19, docket # 91-3 at 3; and Leslie Declaration at ¶ 9, docket # 91-6 at 2.

Mr. Shidler responds that the records could have been altered, but he hasn't presented any evidence that they were. More particularly, he has presented no evidence that Chaplains Babb or Leslie classified him as a Christian. Without any evidence that they did so, he cannot proceed on these claims. Therefore the defendants' summary judgment motions will be granted as to these claims.

<u>11. Denial of Religious Name on Mail in violation of RLUIPA</u>

Salley Stevenson and Chris Johnson contend that Mr. Shidler didn't file a grievance related to using his religious name on mail. In support of this affirmative defense, the defendants have submitted the declaration of Amy Clark: "I have found no grievance filed by Mr. Shidler between April 29, 2005, and November 30, 2005, claiming that he was being

denied the right to exercise his religion because his DOC records were kept under an improper name." Clark Declaration at ¶ 25, docket # 91-4 at 4.

Mr. Shidler presents no response to this argument. Because he has presented no evidence that he grieved this issue, the defendants motion for summary judgment as to these claims will be granted.

CONCLUSION

For the foregoing reasons, the court:

(1) DENIES IN PART the defendants' motion for summary judgment (docket # 90) and allows Mr. Shidler to proceed against:

> Salley Stevenson in her individual capacity for declaratory relief as well as nominal and punitive damages for a violation of RLUIPA (42 U.S.C. § 2000cc-1) for denying him prayer oil when she prohibited all oil at the prison, but not for denying him the ability to purchase non-allergenic prayer oil after oils were again permitted; and

> Chaplin Babb and Chaplin Leslie in their individual capacities for nominal and punitive damages for violations of RLUIPA (42 U.S.C. § 2000cc-1) for denying him communal worship while he was housed in the "P" Housing Unit from July 21, 2004 to August 6, 2004; in the "L" Housing Unit from August 6, 2004 to September 6, 2004; in the "N" Housing Unit from September 6, 2004 to November 3, 2004; and in the "E" Housing Unit from November 3, 2004 to about December 9, 2004;

(2) GRANTS IN PART the defendants' motion for summary judgment (docket # 90) as to all other claims;

(3) DISMISSES Chris Johnson ; and

(4) DENIES the plaintiff's motion for summary judgment (docket # 53).

23

SO ORDERED.

Dated this _4_ Day of February, 2008.

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court